UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ARTHUR FELDER BROWN, III,

                                Petitioner,                12 Civ. 7092 (PAE) (KNF)

              -v-                                        OPINION & ORDER

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

                                Respondent.
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Arthur F. Brown III ("Brown") brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), which denied Brown's application for disability insurance benefits under Title II of the Social Security Act.  Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Before the Court is the January 10, 2014 Report and Recommendation of Magistrate Judge Kevin Nathaniel Fox, recommending that the Court grant Brown's motion, deny the Commissioner's motion, and remand the case to the Commissioner for reconsideration.  Dkt. 19 (the "Report").

      For the reasons that follow, the Court declines to adopt the Report; instead, the Court denies Brown's motion for judgment on the pleadings, and grants the Commissioner's motion.

**I.    Background**[1]

Brown was born in 1958 and holds a Bachelor of Science degree in computer science. Between August 2007 and January 2009, he worked as an administrative assistant and the director of operations for a not-for-profit organization. In January 2009, Brown was discharged from his job due to budgetary cuts. Brown would have continued working for the same organization had his position not been eliminated.

On May 13, 2009, Brown filed an application for disability insurance benefits, alleging that he had been disabled since January 6, 2009—*i.e.*, since his discharge. After the Social Security Administration denied Brown's application for benefits on September 14, 2009, Brown timely requested and was granted a hearing before an Administrative Law Judge ("ALJ"). The issue before the ALJ was whether Brown had been disabled under §§ 216(i) and 223(d) of the Social Security Act between January 6, 2009 and the date of the decision. On March 4, 2011, Brown testified at a hearing before the ALJ.

On April 6, 2011, the ALJ issued a decision denying Brown's request for disability insurance benefits. Employing the five-step evaluation process set out in 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that Brown was not engaged in substantial gainful activity and, at step two, that Brown suffered from two "severe" impairments—namely, osteoarthritis of the knees and obesity. However, the ALJ determined that Brown's mental impairments—*i.e.*, mood disorder, depression, anxiety, and post-traumatic stress disorder— "considered singly and in combination," were non-severe, because they caused only "mild" limitations in daily living, social functioning, concentration, persistence, or pace, and because

---

[1] The Court's summary of the facts of this case is drawn from the detailed account of the facts provided in the Report, to which neither party objects. Where indicated, the Court has also drawn facts from the administrative record. Dkt. 6 ("Admin. Rec.").

Brown had experienced no "episodes of decompensation . . . of extended duration." Admin. Rec. at 15 (citing 20 C.F.R. § 404.1520a(d)(1)).  At step three, the ALJ found that Brown's two severe impairments did not meet or medically equal the specified criteria of any listed impairment, meaning that a finding of disability was not permitted at that step.  The ALJ therefore undertook the assessment at step four, which "focuses on whether, despite a disability claimant's severe impairments, the claimant 'possesses the residual functional capacity ("RFC") to perform her past relevant work.'" *Cichocki v. Astrue*, 729 F.3d 172, 175 (2d Cir. 2013) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

At step four, the ALJ determined that Brown, based on "careful consideration of the entire record," possessed the RFC to "perform the full range of light work," Admin. Rec. at 16, and that, in light of his RFC, Brown was capable "of performing past relevant work as [an] administrative assistant and [a] director of operations," *id.* at 18.  In so concluding, the ALJ referenced and applied the relevant regulation, which defined "light work" as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  The ALJ, however, did not explicitly analyze Brown's work-related abilities on a function-by-function basis.[2]

---

[2] Social Security Ruling 96–8p provides that an assessment of the claimant's RFC "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a *function-by-function basis*, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945."  SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996) (emphasis added).  "The functions described in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and

3

Given the ALJ's conclusion that Brown could perform light work, and that he could perform two of his past jobs, the ALJ held that Brown had not "been under a disability, as defined in the Social Security Act, from January 6, 2009 through the date of this decision." Admin. Rec. at 19.  On July 23, 2012, the Appeals Council denied Brown's request for review of the ALJ's decision, making the ALJ's decision the Commissioner's final decision.

On September 20, 2012, Brown commenced this action.  *See* Dkt. 1 ("Complaint").  The Complaint challenged the decision to deny Brown's disability claim on two grounds.  First, Brown contends that the ALJ did not follow the "treating physician" rule, because he failed: (1) to give the assessment of Brown's treating physician, Dr. J. Toskes, the "controlling weight" it was due; and (2) to give significant weight to the evidence offered by Mr. Julius Nwosu, a physician's assistant ("PA") who treated Brown.  Second, Brown contends that the ALJ failed to provide a detailed analysis of Brown's RFC, in that the ALJ did not expressly assess how long Brown can sit, stand, or walk, or how much he can carry.  Brown also asserts that the ALJ wrongly failed to consider Brown's psychiatric impairments when assessing his RFC.

On October 1, 2012, the Court referred the case to Magistrate Judge Fox.  Dkt. 2.  On February 4, 2013, the Commissioner answered.  Dkt. 7.  On April 5, 2013, Brown filed a motion for judgment on the pleadings, Dkt. 9, and a supporting memorandum of law, Dkt. 10 ("Pet. Br.").  On July 23, 2013, the Commissioner filed a cross-motion for judgment on the pleadings, Dkt. 15, and a supporting memorandum of law, Dkt. 17 ("Resp. Br.").

---

416.945 include physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions; mental abilities such as understanding, remembering, carrying out instructions, and responding appropriately to supervision; and other abilities that may be affected by impairments, such as seeing, hearing, and the ability to tolerate environmental factors." *Cichocki*, 729 F.3d at 176 (citations omitted).

On January 10, 2014, Magistrate Judge Fox issued a Report and Recommendation on the parties' cross-motions for judgment on the pleadings. *See* Report. As to Brown's first challenge, Judge Fox concluded that there was no merit to the claim that Dr. Toskes was Brown's treating physician or that PA Nwosu's opinion was entitled to significant weight. *See* Report at 17–18. As to Brown's second challenge, however, Judge Fox concluded that the ALJ had "failed to include a function-by-function assessment of Brown's physical and mental capacities in assessing Brown's [RFC]," or a "narrative discussion of Brown's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Id*. at 19. Judge Fox held that these omissions by the ALJ made it impossible "to ascertain how the ALJ made his finding, at step four of the sequential analysis, that Brown can perform the full range of light work and that he is capable of performing past relevant work." *Id.* Accordingly, Judge Fox recommended that the Court grant Brown's motion, deny the Commissioner's cross-motion, and remand this case to the Commissioner for reconsideration of step four of the sequential analysis. *Id.*

### III. Discussion

#### A. Legal Standard for Review of the Report

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). However, when the objections simply reiterate previous arguments or make only conclusory statements, the Court should review the report for clear error. *See Genao v. United States*, No. 08 Civ. 9313

5

(RO), 2011 WL 924202, at *1 (S.D.N.Y. Mar. 16, 2011); *Kirk v. Burge*, 646 F. Supp. 2d 534, 539 (S.D.N.Y. 2009) (collecting cases).

> **B.     The Commissioner's Objections to the Report**

On February 13, 2014, the Commissioner submitted objections to the Report. Dkt. 22 ("Resp. Obj."). The Commissioner's primary objection is that the Report is inconsistent with the Second Circuit's recent decision in *Cichocki*, 729 F.3d 172, which was decided after the briefs in this case were submitted.[3] *Cichocki* held, contrary to the approach taken in the Report, that an ALJ's failure to conduct a function-by-function analysis at step four of the sequential test is *not* a *per se* error requiring remand. *See id.* at 177 ("We decline to adopt a *per se* rule."). Instead, the Second Circuit held that:

> The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence. Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed.

*Id.* "Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.*

Because the Commissioner has raised a specific objection to the Report, the Court reviews the ALJ's decision *de novo*.[4]

---

[3] The parties do not appear to have brought the decision in *Cichocki* to Judge Fox's attention.

[4] To be clear, however, the Court does not review *de novo* Judge Fox's factual conclusions that Dr. Toskes was not Brown's treating physician and that PA Nwosu's opinion was not entitled to significant weight. *See* Report at 17–18. Although Brown did not file objections to the Report, he did file an opposition to the Commissioner's objections, *see* Dkt. 23, in which he asserted that

6

### C.    Review of the ALJ's Decision

#### 1.    Legal Standards Under the Social Security Act

"A claimant is disabled and entitled to disability insurance benefits if she is unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Cichocki*, 729 F.3d at 176 (quoting 42 U.S.C. § 423(d)(1)(A)).  The Social Security Act regulations establish a five-step sequential evaluation process to guide disability determinations:

> The first step of this process requires the Secretary [of Health and Human Services] to determine whether the claimant is presently employed.  If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations.  When the claimant has such an impairment, the Secretary will find the claimant disabled.  However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work.  Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work.  If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working.

*Perez*, 77 F.3d at 46 (citing 20 C.F.R. § 404.1520); *see also Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003).

Relevant here is step four: "If a claimant has a severe impairment limiting her mental or physical ability to do basic work activities but not constituting a listed impairment in Appendix 1 of the Social Security regulations, the Commissioner asks, at Step Four, whether, despite the

---

Judge Fox's determinations regarding Dr. Toskes and PA Nwosu were incorrect.  However, because Brown simply reiterates his previous arguments, the Court reviews these conclusions for clear error.  *See Kirk*, 646 F. Supp. 2d at 539.  Finding none, the Court adopts Judge Fox's determination that the ALJ gave proper weight to the opinions of Dr. Toskes and PA Nwosu.

7

claimant's severe impairment, he or she has residual functional capacity to perform her past work." *Cichocki*, 729 F.3d at 176 (quoting *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000)) (internal quotation marks omitted). An individual's RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Id.* (citing SSR 96–8p, 1996 WL 374184, at *1). If, at step four, the ALJ determines that a claimant has the RFC to perform his or her past work, then he or she is not disabled and thus is not entitled to disability benefits.

As stated above, the ALJ here determined that Brown has the RFC needed to perform his past work, and thus is not disabled.

A district court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)); *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (reviewing courts "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied") (citations omitted). "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled . . . or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citations omitted).

Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw*, 221 F.3d at 131 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Second Circuit has described substantial evidence review as "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault*, 683

F.3d at 448 (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)). Accordingly, once an ALJ finds facts, this Court may only reject those facts "if a reasonable factfinder would *have to conclude otherwise*." *Id.* (citing *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis in *Brault*).

### 2. Application of the Legal Standards

Based on the Court's detailed review of the administrative record, the Commissioner's decision denying Brown's disability benefits claim must be affirmed.

At the outset, neither side credibly asserts that the ALJ made any error of law in his opinion, and the Court independently finds that the ALJ applied the correct legal standards. Moreover, based on the Court's review, the ALJ's analysis of Brown's functional limitations and restrictions afforded an adequate basis for meaningful judicial review, and his conclusion that Brown was not disabled under step four of the sequential test was supported by substantial evidence. Although the ALJ, as Magistrate Judge Fox points out, did not include an explicit function-by-function analysis of Brown's capabilities, he did analyze, in detail, all of Brown's relevant limitations in determining that Brown was capable of performing his past work.

Specifically, in his decision, the ALJ concluded that Brown suffered, during the relevant period, two "severe" physical impairments—osteoarthritis of the knees and obesity. Admin. Rec. at 14. In assessing whether these impairments foreclosed Brown's ability to work, the ALJ relied on the full range of medical evidence in the record. In particular, the ALJ relied upon a consultative examination that was conducted by Dr. Brian Hamway on August 4, 2009. In that examination, Brown was found to have a full range of motion in his shoulders, elbows, forearms, wrists, hips, knees, and ankles. *Id.* at 17. Brown could walk on his heels and toes without difficulty and could perform a full squat. *Id.* He could also go on and off the examination table

9

and rise from a seated position without difficulty. *Id.* His muscle strength was reported as a five out of five (*i.e.*, normal strength), and his lumbar range of motion was normal except for "a ten degree reduction in extension." *Id.* Moreover, the assessment determined that Brown had only mild limitations in prolonged walking, climbing, squatting, kneeling, lifting, and carrying due to knee and lower back pain. *Id.* The ALJ also noted that the following facts were consistent with a residual capacity to perform light work: that Brown (1) was able to bike for 15 minutes on three occasions in August 2009; (2) reported being able to perform numerous daily tasks, such as cooking, cleaning, shopping, and attending sporting events and musical performances; and (3) was able to climb four flights of stairs to reach his fifth-floor walk-up apartment "without too much difficulty." *Id.* Based on this evidence, the ALJ concluded that Brown was able to perform the full range of light work, *id.* at 16—meaning that, under the relevant regulation, he could perform: (1) occasional lifting of no more than 20 pounds and frequent lifting or carrying of objects weighing up to 10 pounds; and (2) a good deal of walking and standing, *see* 20 C.F.R. § 404.1567(b). The Court concludes that this determination is both detailed enough to be judicially reviewed, and supported by substantial evidence.[5]

As to the ALJ's determination that Brown's mental impairments were not severe, that, too, is supported by substantial evidence in the record. Although the ALJ concluded that Brown's only "severe" impairments were physical—*i.e.*, osteoarthritis of the knees and obesity—the ALJ still analyzed in detail Brown's "medically determinable mental impairments of mood disorder, depression, anxiety, and post-traumatic stress disorder." *Id.* at 14. The ALJ analyzed each of the "four broad functional areas set out in the disability regulations for

---

[5] In his Report, Judge Fox similarly concluded that "the ALJ did not err in his finding that Brown can perform light work because his finding is supported by substantial evidence." Report at 18.

evaluating mental disorders," and concluded that Brown's mental impairments caused no more than a "mild" limitation in the first three functional areas—namely, the activities of daily living, social functioning, and concentration, persistence, or pace. *Id.* at 14–15. The ALJ also concluded, in the fourth area, that Brown had not suffered any episodes of "decompensation which have been of extended duration." *Id.* at 15. In making these determinations, the ALJ referenced and discussed psychological examinations of Brown conducted on August 4, 2009, September 25, 2009, and January 12, 2011. These examinations revealed, *inter alia*, that Brown did not possess limitations in his ability to pay attention, get along with others, remember things, or finish what he had started. Accordingly, the ALJ determined that Brown's mental impairments, "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." [6] *Id.* at 14. Put differently, the ALJ determined that Brown's mental disabilities would not prevent him from continuing to work. There is no basis on this record to reverse that determination.[7]

---

[6] In his Report, Judge Fox also concluded that "substantial evidence supports the ALJ's finding that Brown's mental impairment(s) is not severe." Report at 19.

[7] Brown contends that because the ALJ concluded that Brown's mental impairments were not "severe" under the Act, the ALJ "utterly failed to consider their impact on [Brown's] overall RFC." Dkt. 23 at 4. That claim is belied by the record. While Brown is correct that multiple non-severe impairments may have a "combined impact" that qualifies an individual as disabled, *see* 20 C.F.R. § 404.1523, the ALJ stated in his opinion that his assessment of Brown's RFC reflected the degree of limitation the ALJ found in his "paragraph B mental function analysis," Admin. Rec. at 16. The Court takes that to mean that the ALJ considered all of Brown's mental impairments in undertaking the sequential evaluation process, including, presumably, the residual capacity assessment at step four. As the Second Circuit noted in *Cichocki*:

> An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision. The ALJ's finding that [the claimant's] bipolar disorder did not cause more than "*minimal limitation in the claimant's ability to perform basic mental work activities*" further undermines the suggestions that the ALJ failed to consider this condition in concluding [the claimant] did not suffer from multiple impairments that rendered

11

Because the Commissioner's decision denying Brown disability benefits is supported by substantial evidence, and because that decision included a thorough analysis of the evidence of Brown's physical and mental limitations, the only basis for remanding this case to the Commissioner would be the ALJ's omission of a "function-by-function analysis." In this Circuit, however, "the failure explicitly to engage in such a function-by-function analysis does not constitute a *per se* error requiring remand." *Cichocki*, 729 F.3d at 173–74. Finding no other basis for reversal or remand, the Court affirms the Commissioner's decision to deny Brown's application for disability benefits.

## CONCLUSION

For the foregoing reasons, the Court denies Brown's motion for judgment on the pleadings and grants the Commissioner's motion. The Clerk of Court is directed to terminate the motions pending at docket numbers 9 and 15 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 10, 2014
New York, New York

---

        her disabled or that consideration of her bipolar disorder should lead to a different
        Step Four conclusion.

729 F.3d at 178 n.3 (internal citations omitted) (emphasis added). Similarly, in this case, the ALJ concluded that Brown's mental impairments did not cause "more than minimal limitation in the claimant's ability to perform basic mental work activities." Admin. Rec. at 14.

12